## UNITED STATES DISTRICT COURT
## DISTRICT OF GEORGIA
## NORTHERN DIVISION

| | |
|---|---|
| **ABBY MARTIN**<br>Los Angeles County, California<br><br>Plaintiff,<br><br>v.<br><br>**STEVE WRIGLEY,** CHANCELLOR FOR THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, IN HIS OFFICIAL CAPACITY,<br><br>**AND**<br><br>**KYLE MARRERO,** PRESIDENT OF GEORGIA SOUTHERN UNIVERSITY, IN HIS OFFICIAL CAPACITY<br><br>Defendants. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Abby Martin files this Complaint against Defendants Chancellor Wrigley of the Board of Regents of the University System of Georgia and President Marrero of Georgia Southern University, which conditioned an invitation to speak at an academic conference on the Plaintiff agreeing in writing to abandon her First Amendment-protected journalism about and political advocacy for the rights of Palestinians. The Complaint alleges violations of the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983.

## INTRODUCTION

1.     The First Amendment protects the rights of all speakers to advocate for all viewpoints on issues of public concern.  "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

2.     The conflict between Israel and Palestine is a longstanding issue of significant public concern, both in the United States and internationally, to which politicians, professionals, cultural figures, and the press dedicate considerable energy and resources.

3.     On April 26, 2016, the Governor of Georgia signed SB 327[1], which forbids all state government bodies from contracting with people who advocate for Palestinian human rights by boycotting Israel unless such people agree in writing to abandon this form of political expression and association.  The law punishes people, including Plaintiff Abby Martin, by disqualifying them from Georgia contracts so long as they express views about Israel and Palestine outside the official orthodoxy that SB 327 establishes.  The law engages in

---

[1] Ga. Code Ann., § 50-5-85

speaker-based discrimination and unlawfully restricts fundamental First Amendment rights.

4.     Abby Martin is a prominent journalist and advocate for the rights of Palestinians.   Through her work, including her support for the BDS movement, she frequently expresses views critical of the Israeli government's actions and the U.S. government's support for those actions.   In 2019, for example, Martin released her documentary film, *Gaza Fights for Freedom,* during which she calls on viewers to support the Boycott, Divestment, and Sanctions movement.

5.     On July 19, 2019, Georgia Southern University invited Martin to keynote an academic conference on campus.   After accepting the invitation, Defendants sent Martin a contract that outlined the services—a keynote presentation—she would provide in exchange for an honorarium of $1,000. The contract also required her to certify that she was "not currently engaged in, and agree[s] for the duration of this agreement to not engage in, a boycott of Israel."   Martin emailed in response: "As I'm sure you know, a lot of my work advocates the boycott of Israel…[and] I cannot sign any form promising to not boycott Israel."

6.     As a result, Defendants prevented Martin from providing a keynote presentation and receiving the agreed-upon honorarium.

7.     In the aftermath of Martin's refusal to sign the agreement, Defendants cancelled the academic conference

8.     Georgia's ban on contracting with anyone who, like Abby Martin, participates in or advocates for the boycott of Israel constitutes viewpoint discrimination that chills constitutionally-protected speech in support of Palestinians.  It attempts to coerce Ms. Martin and others into signing what is essentially a loyalty oath to a particular foreign country.  This Court should invalidate SB 327 and enjoin enforcement of mandatory "No Boycott of Israel" clauses in Georgia contracts, in accordance with the First Amendment.

## PARTIES

9.     Plaintiff Abby Martin is a visual artist and journalist. She is the founder of *Media Roots* and creator of *The Empire Files,* an investigative documentary series critical of US foreign policy. She also wrote and directed the feature length documentary, *Gaza Fights For Freedom*, which examines the Great March of Return protests in Gaza.

10.    Defendant President Kyle Marrero of Georgia Southern University ("GSU"), with campuses in Savannah, Statesboro, and Hinesville, leads the state's largest and most comprehensive center of higher education south of Atlanta.  As a unit of the University System of Georgia, it serves more than 25,000 students from all 50 states.

11.     Defendant Steve Wrigley, is the Chancellor of the University System of Georgia, with his principal office at 270 Washington Street SW, Atlanta, GA 30334.  In his capacity as chancellor, Defendant Wrigley oversees all public colleges and universities, including GSU.  Elected by the Board of Regents, Defendant Wrigley serves as the Board of Regents' chief executive officer and the chief administrative officer of the University System. He is sued in his official capacities.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the First and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. § 1983.

13.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

14.     This Court has personal jurisdiction over the Defendants, because GSU is a unit of the University System of Georgia overseen by Defendant Wrigley, which resides in this District.

15.     A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.  Venue therefore lies in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### The Israel – Palestine Conflict is a Fraught Issue of International Importance

16.    The relationship between Israel and Palestine is a significant international political conflict.  One of the core disputes within that conflict concerns Israel's continuing occupation and settlement of Palestinian territories, including the West Bank.

17.    On December 23, 2016, the United Nations Security Council unanimously (with the United States abstaining) adopted Resolution 2334. The Resolution condemned Israeli settlements in the Occupied Palestinian Territories as illegal, reaffirming that continuing settlements "constitute[e] a flagrant violation under international law and a major obstacle to the achievement of the two-State solution and a just, lasting and comprehensive peace."  The Resolution additionally condemned the Israeli government's human rights abuses against Palestinians.

18.    A robust international movement seeks to impose economic pressure on the Israeli government to cease its settlement activity in Palestinian Territory and end other violations of Palestinian human rights. Modeled after the South African anti-apartheid boycott movement, the "Boycott, Divestment, and Sanctions" movement seeks the peaceful end of Israeli discrimination against, and maltreatment of, Palestinians. The BDS

movement specifically encourages economic divestment from institutions that are not in compliance with established international law related to the Israeli occupation of Palestine.

19.     The United States has historically discouraged Israeli settlements as "inconsistent with international law." Overall, however, U.S. policy strongly supports the Israeli government, and the two nations enjoy close political and economic relationships. These friendly relations have tended to soften or mute the United States' criticism of Israeli settlements. The United States abstained from Resolution 2334 due to its political support of Israel, and previously vetoed a similar U.N. Resolution in February 2011.

20.     The merits of all perspectives in the Israel-Palestinian conflict and the U.S.'s respective political positions are robustly and publicly debated by leading politicians, academics, universities, non-profit organizations, businesses, and media organizations in the United States and around the world.

21.     Former Governor of Georgia and U.S. President Jimmy Carter stated as recently as January 30, 2020 that current U.S. policy on Israel "breaches international law regarding self-determination, the acquisition of land by force, and annexation of occupied territories."

**Georgia Joins Nationwide Attempt to Restrict and Punish Free Speech on Israel-Palestine**

22.   Because the prevailing political sentiment in the United States favors the Israeli government, many U.S. states, private organizations, and public officials view the growth of the Boycott, Divestment, and Sanctions movement as a threat to the Israeli's ability to continue occupying and settling Palestinian territory with American political, economic, and military support. In accordance with this view, public officials have attempted to establish and enforce a political orthodoxy that suppresses BDS advocacy and other criticism of Israel.  For example, the first bill introduced in the United States Senate last year was S.B. 1: "The Combating BDS Act of 2019."

23.   This political climate has, in recent years, prompted local and state legislatures to consider more than a hundred bills and resolutions aimed at hindering the Boycott, Divestment, and Sanctions movement. At least twenty-five states have implemented "anti-BDS" requirements, either through legislation or executive orders.

24.   Georgia is one of the more than two dozen states to have adopted a law aimed at suppressing the Boycott, Divestment, and Sanctions movement by punishing and excluding those who support it.

25.   The intent of the law—to suppress speech that advocates for Palestinians and to enshrine into Georgia state code protections that apply to

Israel alone—is clear from both its content as well as from the stated views of its chief proponents.

26.    Then-Governor Nathan Deal, who signed SB 327, has made a political commitment to combatting the BDS movement that Martin supports. While governor, Deal signed onto an advocacy group's Governors United Against BDS initiative, which collected commitments from "all 50 U.S. states and the mayor of D.C. to condemn the boycott, divestment, and sanctions (BDS) movement."  In signing on to this initiative, then-Governor Deal—along with every other governor in the country—"strongly condemn[ed] the BDS movement as incompatible with the values of our states and our country."

27.    The chief legislative sponsor of SB 327, Senator Judson Hill, made clear that the law was intended to adopt the policy preferences of a single foreign country: "The State of Georgia is proud to stand shoulder to shoulder with our friend and key trading partner Israel."

28.    SB 327 made it against the law for Georgia to contract with individuals unless they accede to "a written certification that [they are] not currently engaged in, and agre[e] for the duration of the contract not to engage in, a boycott of Israel."  Tellingly, the law permits individuals to contract with Georgia while boycotting every other country on earth, from Canada to the United Kingdom to China to even the American government itself.

29.    The law applies to Defendants as political subdivisions of the State of Georgia and to all their contracts other than those "with a total value of less than $1,000.00."  Ga. Code Ann. § 50-5-85

30.    SB 327 defines "boycott of Israel" expansively to include the economic actions at the core of a boycott effort and the advocacy, speech, and assembly that give the BDS movement persuasive force in the public debate about Israel and Palestine.

31.    SB 327 defines a "boycott of Israel" as "engaging in refusals to deal with, terminating business activities with, or other actions that are intended to limit commercial relations with Israel or individuals or companies doing business in Israel or in Israeli-controlled territories, when such actions are taken…in compliance or adherence to calls for a boycott of Israel…[or] in a manner that discriminates on the basis of nationality, national origin, religion, or other unreasonable basis that is not founded on a valid business reason."

32.    The existence of a "valid business reason" exception in SB 327 means that the state of Georgia permits a refusal to do business with Israel or Israel-connected companies if the refusal is based upon business purposes but forbids the same conduct done for political purposes.   Thus, SB 327 discriminates between identical conduct based on the intent of the individual or company.

## Abby Martin Blocked from Speaking at Georgia Southern University, Because She Refuses to Sign Loyalty Oath to Foreign Country

33.    The International Critical Media Literacy Conference ("ICMLC") is a long-standing conference that GSU hosts on its campus in Savannah.  The gathering is "designed to aid current educational leaders, future teachers, youth, and other concerned citizens in their understanding of mass media and its impact on events that shape our daily lives."

34.    In past years, the conference has brought together dozens of academics from across the country to "promot[e] critical media literacy" among attendees and each other, which GSU conference organizers view as "essential in excavating social inequalities and fostering participatory democracy during the 21st century."

35.    As an independent journalist whose work is broadly critical of US policies as well as US media practices, Defendants invited Martin to "join us at the 2020 International Critical Media Literacy Conference as the Keynote Speaker on Friday, February 28, 2020.  The invitation provided details of the "speaker package" Defendants would provide Martin, should she agree.  It included an honorarium and travel and lodging expenses to attend Defendants' conference.

36.    On July 22, 2019, Martin accepted Defendants' invitation by email.

37.    On September 11, 2019, and in order to issue Martin payment, Defendants asked Martin to sign an agreement regarding her compensation for keynoting the conference.  The contract appeared on GSU's Division of Continuing Education letterhead, directed Martin to "provide instruction to those properly registered for the program," and specified that Martin would be "performing these services as an independent contractor and not as an employee of Georgia Southern University."

38.    Days after sending the contract, Defendants—through GSU employees—wrote Martin again, explaining that they "wanted to draw [her] attention [to] legal language that the University and State of Georgia require us to include."  The language in the contract that Defendants want to bring to Martin's attention was the following:

> You certify that you are not currently engaged in, and agree for the duration of this agreement not to engage in, a boycott of Israel, as defined in O.C.G.A. Section 50-5-85.

39.    In this September 18, 2019 email, Defendants stated explicitly that they would honor their invitation to Martin only "[i]f this language is acceptable."

40.    Martin responded by email expressing her shock:  "I'm sure you know, a lot of my work advocates the boycott of Israel, and my new film features that call to action. I cannot sign any form promising to not boycott

12

Israel." SB 327 and the anti-BDS clause it required Defendants to include in the GSU contract are the only reasons why Martin did not sign the agreement.

41.   GSU would not contact with Martin because she was unwilling to sign the form agreeing to surrender her First Amendment rights to advocate for the BDS movement.

42.   Martin was deprived of, and will continue to be deprived of, her ability to speak on state college campuses in Georgia or at any other institution that disqualifies speakers based on their protected political activity and that mandates that she sign Georgia's required loyalty oath to Israel and pass Georgia's ideological litmus test.

43.   Martin was deprived of receiving the honorarium she would have been entitled to as the keynote speaker at the Conference.

44.   Martin was deprived, and will continue to be deprived, of the opportunity to showcase her work and such deprivation causes harm to her business.

45.   Because Martin is a frequent speaker on college campuses across the country, she is likely to be prevented from speaking again in the future on any of the campuses overseen by Defendant Wrigley. SB 327 also deters Martin from seeking out or organizing campus events to share her reporting or to screen her film about Palestinians' struggle for dignity and equality in Gaza.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
## TO THE U.S CONSTITUTION
## (42 U.S.C. § 1983) (Freedom of Speech and Assembly)

46.    Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

47.    The First Amendment provides: "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. Amend. I.

48.    The First Amendment binds the State of Georgia pursuant to the incorporation doctrine of the Fourteenth Amendment.

49.    Political speech on issues of great national and international importance is central to the purposes of the First Amendment.  Speech and advocacy related to the Israel – Palestine conflict is core political speech on a matter of public concern entitled to the highest levels of constitutional protection.

50.    Economic boycotts for the purposes of bringing about political change are entrenched in American history, beginning with colonial boycotts on British tea.  Later, the Civil Rights Movement relied heavily on boycotts to combat racism and spur societal change.  The Supreme Court has recognized that non-violent boycotts intended to advance civil rights constitute "form[s] of

14

speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

51.     The First Amendment protects the rights of speakers to call for and participate in economic boycotts as a means of amplifying their message. Joining voices together to participate in and call for political boycotts is protected association under the First Amendment.

52.     Plaintiff has standing to challenge the inclusion of the discriminatory and unconstitutional "No Boycott of Israel" terms in Defendants' contracts as well as the law—SB 327—that mandates these illegal provisions.

53.     SB 327 violates the First Amendment, both on its face and as applied to Martin.

54.     As a consequence of Defendants' actions, Martin has suffered the loss of First Amendment freedoms, an irreparable injury.

55.     As a consequence of Defendants' actions, Martin has suffered damages for loss of First Amendment rights, for deprivation of the honorarium she would otherwise have received and for the lost opportunity to publicize her work and her documentary, among other damages.

56.    SB 327 constitutes viewpoint discrimination because it only bars speech and expression against Israel, and not speech or expression in favor of Israel or against Palestine.

57.    SB 327 also constitutes viewpoint discrimination because it bars boycott conduct related to Israel if, and only if, that boycott conduct is done for a political purpose.  Refusals to do business with Israeli entities undertaken for business reasons are not subject to SB 327.

58.    SB 327 establishes content-specific restrictions on speech which single out boycotts of Israel for disfavored treatment.

59.    SB 327 establishes speaker-specific restrictions on speech which single out government contractors who advocate for Palestine human rights by boycotting Israel as specific speakers who warrant disfavored treatment.

60.    SB 327 constitutes an impermissible State attempt to impose conditions on an independent contractor on a basis that infringes constitutionally protected freedom of speech.

61.    SB 327 constitutes an impermissible State attempt to impose an ideological litmus test.  It also compels speech related to a government contractors' political beliefs, associations, and expressions insofar as the anti-BDS clause, were Martin to comply with it, would require her to remove content from her websites and social media accounts, to cease the distribution

of her documentary film that calls on people of conscience to join the BDS movement, and otherwise abandon her political beliefs and advocacy.

62.    SB 327 also compels speech because people who, for example, refuse to buy products made by Sabra, a company that has been the focus of BDS efforts, would have to abandon this consumer choice and buy Sabra hummus, if they want to comply with the anti-BDS clause.

63.    SB 327 imposes a prior restraint on speech by requiring speakers to certify in advance that they do not and will not engage in a boycott of Israel.

64.    SB 327 violates the First Amendment as it bars state contractors from receiving government contracts because of their protected beliefs and associations.

65.    SB 327 is substantially overbroad.

66.    SB 327 is void for vagueness as its sweeping language is fairly read to prohibit a wide range of conduct, including things like "liking" a social media post regarding the BDS movement or even attending a protest against Israel. The Supreme Court has held, "[w]here a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

67.    SB 327 chills the exercise of constitutionally protected speech and associations.

68.   Defendants lack a compelling governmental interest in the enforcement of SB 327 and the mandated "No Boycott of Israel" certifications in Georgia contracts

69.   Defendants' contracts bear no relationship, or otherwise, with the contractors' advocacy for or participations in boycotts of Israel.

70.   Enforcement of SB 327 and the mandated "No Boycott of Israel" certifications in Georgia contracts does not constitute the least-restrictive means of fulfilling any state interest.

71.   SB 327 and the mandated "No Boycott of Israel" certifications in Georgia contracts are facially unconstitutional under the First Amendment and cannot be enforced against anyone by Defendants.

72.   SB 327 and the mandated "No Boycott of Israel" certifications in Georgia contracts, as implemented by Defendants, is unconstitutional as applied to Plaintiff and her contract with Defendants to keynote an academic conference.

73.   SB 327 and the mandated "No Boycott of Israel" certifications in Georgia contracts, as implemented by Defendants, deters people of ordinary firmness from the exercise of First Amendment rights.

74.   As a consequence of Defendants' actions, Martin has suffered damages for loss of First Amendment rights, for deprivation of the honorarium

she would otherwise have received and for the lost opportunity to publicize her work and her documentary, among other damages.

75.   Absent an injunction, Plaintiff will suffer irreparable harm because she will be barred by state law and contract from engaging in protected First Amendment speech and association on a matter of public concern. Plaintiff will be chilled in her personal capacity to advocate for Palestinian rights and contract with Georgia on equal terms to those who do not boycott Israel.

76.   If Defendants are not enjoined from enforcing SB 327 from including the "No Boycott of Israel" clause in state contracts, Plaintiff and all advocates for human rights in Palestine will be effectively prohibited from entering into any agreement with the State of Georgia unless they give up their constitutionally-protected views.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE FOURTEENTH AMENDMENTS TO THE U.S CONSTITUTION (42 U.S.C. § 1983) (Due Process)

77.    Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

78.   Under the Fourteenth Amendment of the United States Constitution, the Government may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. I.

79.    As the Supreme Court has explained, "[a] statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment." *Cramp v. Bd. of Pub. Instruction of Orange Cty., Fla.*, 368 U.S. 278, 288 (1961).

80.    The Supreme Court has further explained the same prohibition of vagueness applies to oaths. "[A]n oath may not be so vague that "men of common intelligence *681 must necessarily guess at its meaning and differ as to its application, (because such an oath) violates the first essential of due process of law." *Cole*, 405 U.S. at 680–81 (quoting *Cramp*, 368 U.S. at 287.SB 327 and the mandated "No Boycott of Israel" certifications in Georgia contracts are void for vagueness.

81.    The vagueness doctrine applies to language "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

82.    Absent an injunction, Plaintiff will suffer irreparable harm because she will be prevented by the certification requirement in the Executive Order from speaking on Defendants' campuses as a speaker.  Plaintiff will be

chilled in her personal capacity to advocate for Palestinian rights and contract with the state on equal terms to those who do not boycott Israel.

83. If Defendants are not enjoined from enforcing SB 327, and from including the "No Boycott of Israel" clause in state contracts, Plaintiff and all advocates for Palestine will be effectively prohibited, on the basis of a vague certification requirement, from entering into any agreement with the State of Georgia unless they give up their constitutionally-protected views.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter the following relief:

A. Enter an injunction against Defendants' continuing enforcement of SB 327;

B. Grant Plaintiff an injunction striking the "No Boycott of Israel" certification from any contract governed by SB 327;

C. Enter an injunction against Defendants' inclusion of "No Boycott of Israel" provisions in any other state contract pursuant to SB 327;

D. Declare SB 327 unconstitutional and unenforceable statewide;

E. Issue judgment in Plaintiff's favor on all causes of action alleged herein pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution;

F.    Declare void any "No Boycott of Israel" certifications that now exist pursuant to SB 327 in any contracts between Georgia public entities and private companies or persons.

G.    Award Plaintiff damages for the harms suffered, including compensatory damages of $1,000.

H.    Award Plaintiff reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and,

I.    Grant such other and further relief as the Court may deem to be just and proper.

## JURY DEMAND

NOW COME Plaintiff, by and through her undersigned counsel, and hereby demands trial by jury of the above-referenced causes of actions.

Dated:  February 10, 2020

_____/s/__Murtaza Khwaja_____

**CAIR-GEORGIA**
Edward Mitchell (Ga. Bar # 312461)
emitchell@cair.com
Murtaza Khwaja (Ga. Bar #750003)
mkhawaja@cair.com

PO Box 942134
Atlanta, GA 30341
Phone: (404) 419-6390

**CAIR LEGAL DEFENSE FUND**

Lena F. Masri (DC # 9777642)^

lmasri@cair.com
Gadeir I. Abbas (VA # 81161) *^
gabbas@cair.com
Justin Sadowsky (DC # 1000019)^
jsadowsky@cair.com

453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

**PARTNERSHIP FOR CIVIL JUSTICE FUND**

Mara Verheyden-Hilliard (D.C. #450031)^
mvh@justiceonline.org

617 Florida Avenue, NW
Washington, DC 20001
Phone: (202) 232-1180
Fax: (202) 747-7747

^*pro hac vice* application forthcoming
*** Licensed in VA, not in D.C. Practice limited to federal matters.*