IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ABBY MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 1:20-cv-00596-MHC |
| ) | |
| SONNY PERDUE, Chancellor for the ) | |
| Board of Regents of the University ) | |
| System of Georgia, in his official capacity,) | |
| and KYLE MARRERO, President of ) | |
| Georgia Southern University, in his ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

Defendants Sonny Perdue[1] and Kyle Marrero, by and through counsel, file this brief in support of their motion to dismiss this action on mootness grounds, showing the Court as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

In 2016, the State of Georgia enacted 2016 Ga. Laws Act 378, which was codified at O.C.G.A. § 50-5-85. The statute prohibits the state from entering into certain contracts unless the contractor certifies that it is not

---

[1] Steve Wrigley, sued in his official capacity, no longer serves as Chancellor of the University System of Georgia. Sonny Perdue became Chancellor on April 1, 2022, and is currently serving in such position. He is therefore automatically substituted as a party. *See* Fed. R. Civ. P. 25(d).

1

currently engaged in, and agrees for the duration of the contract not to engage in, a boycott of Israel. *See* O.C.G.A. § 50-5-85(b).

In 2019, plaintiff Abby Martin sought to enter into an agreement with Georgia Southern University (GSU) in which she was to receive an honorarium of $1,000, as well as limited travel expenses, to speak at an academic conference. (Doc. 26, ¶ 5). Martin refused to sign the agreement, however, because it contained the certification required by O.C.G.A. § 50-5-85. (*Id.*). Thereafter, Martin filed the instant lawsuit, asserting First and Fourteenth Amendment claims under 42 U.S.C. § 1983 against the Chancellor of the University System of Georgia and the President of GSU in their official capacities, as well as three GSU employees in their individual capacities. (Docs. 1, 26). She alleged that § 50-5-85 is unconstitutional on its face and as applied to her and sought equitable relief against the official-capacity defendants and damages against those sued in their individual capacities. (Doc. 26).

On September 15, 2020, all defendants named in the action brought a motion to dismiss, which was granted in part and denied in part. (Doc. 53). The Court dismissed the individual-capacity defendants and Martin's claims for damages, but permitted her official-capacity claims for equitable relief against defendants Wrigley and Marrero to proceed to discovery. (*Id.*). Martin's remaining claims for equitable relief seek, in particular, a

declaration that § 50-5-85 is "unconstitutional and unenforceable statewide" and a permanent injunction precluding the defendants from enforcing the statute's certification requirement. (Doc. 26, p. 25). Martin claims that, absent such relief, she will be effectively barred from contracting with the State of Georgia to speak on state college and university campuses. (*Id.*, ¶¶ 56, 87-88, 94, 95).

Following the close of discovery, both Martin and the two remaining defendants filed motions for summary judgment. (Docs. 61, 61-2; Docs. 67, 67-2). Those motions are fully briefed and pending before the Court.

## H.B. 383 AND THE AMENDMENTS TO O.C.G.A. § 50-5-85

In January 2022, the Georgia General Assembly passed House Bill 383 to amend O.C.G.A. § 50-5-85 and, on February 21, 2022, Governor Kemp signed H.B. 383 into law. *See* 2021 Ga. H.B. 383. The bill amends § 50-5-85 by, *inter alia*, limiting its scope to companies with five or more employees and to contracts valued at $100,000 or more. *Id.* Individuals and sole proprietors are completely and explicitly eliminated from the statute's coverage.[2] *Id.* The amendments took effect on July 1, 2022.

---

[2] O.C.G.A. § 50-5-85(b), as amended, provides that "[t]he state shall not enter into a contract valued at $100,000.00 or more with a company if the contract is related to construction or the provision of services, supplies, or information technology unless the contract includes a written certification that such company is not currently engaged in, and agrees for the duration of the contract not to engage in, a boycott of Israel." *Id.* The amended statute further provides that "'[c]ompany means any organization, association,

3

The amendments to O.C.G.A. § 50-5-85 render the statute inapplicable to Martin. Thus, as discussed below, she lacks a personal stake in the outcome of the lawsuit, and the case no longer presents a live controversy with respect to which the Court can grant effective relief. The case is moot and must be dismissed.

## ARGUMENT AND CITATION TO AUTHORITY

### A. To satisfy Article III's "case or controversy" requirement, a plaintiff must maintain a personal stake in the outcome of the case throughout the lawsuit.

The Constitution permits courts to decide legal questions only in the context of justiciable "Cases" or "Controversies." U.S. Const., Art. III, § 2. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Absent such a personal stake, the court

---

corporation,  partnership, joint venture, limited partnership, limited liability partnership, limited  liability company, or other entity or business association which employs more than five persons but excludes individuals and sole proprietorships, …." *Id.*

cannot offer any effective relief to the claimant. *See, e.g., Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 732-33 (11th Cir. 2018). And courts "are not in the business of issuing advisory opinions that do not 'affect the rights of litigants in the case before' [it] or that merely opine on 'what the law would be upon a hypothetical state of facts.'" *Gagliardi*, 889 F.3d at 732-733 (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). *See also id.* ("'[A] federal court has no authority … to declare principles or rules of law which cannot affect the matter in issue in the case before it.'") (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)); *Alvarez v. Smith*, 558 U.S. 87, 93 (2009) ("[A] dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'"). Indeed, Article III's case or controversy requirement restricts a court's power to judgments which "redress or otherwise [] protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Id.*

This "personal stake" requirement "persists throughout a lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). In other words, "it is not enough that a dispute was very much alive when suit was filed." *Id.* at 477-78. Rather, to sustain the court's jurisdiction, the plaintiff "must continue to have a personal stake in the outcome of the lawsuit." *Id.* Accordingly, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the

outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis*, 494 U.S. at 477-78). *See also Warth*, 422 U.S. at 498 n. 10. (explaining that "[t]he standing question [] bears close affinity to questions of … mootness—whether the occasion for judicial intervention persists.").

### B. This case is moot because the amendments to § 50-5-85 deprive Martin of a personal stake in the outcome of this case.

Martin describes herself as a journalist and documentary filmmaker whose work includes speaking engagements. (Doc. 61-4, ¶¶ 2, 3). She purportedly seeks to contract with the State of Georgia in such capacity to speak on public university and college campuses. (Doc. 26, ¶¶ 53, 55-56; Doc. 61-4, ¶¶ 8, 10-11, 16-19). The crux of Martin's lawsuit is that she is effectively prohibited from doing so by § 50-5-85's certification requirement. (*Id*.). For this reason, she seeks equitable relief in the form of a declaration that the certification requirement is unconstitutional, as well as a permanent injunction precluding the defendants from enforcing it. (Doc. 26, pp. 25-26). In light of recent statutory amendments, however, § 50-5-85 is no longer applicable to Martin and the contracts she purportedly seeks to enter into with the State. Martin is an individual or sole proprietor, both of which the statute now exempts. Additionally, her past speaking engagement would

6

have paid far less than the new statutory threshold, which limits the statute's applicability to contracts valued at $100,000 or more. Martin is thus now free to contract with the State without satisfying § 50-5-85's certification requirement. And, importantly, she is free to do so without intervention or relief from this Court.

The statutory amendments have, in short, provided Martin the relief her lawsuit seeks. And, of course, the Court cannot provide Martin with any effective relief from a statute that does not apply to her. She no longer has a personal stake in the outcome of the case and, accordingly, she lacks standing to seek equitable relief against the defendants. *See, e.g., Fort Lauderdale Food not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1286 (11th Cir. 2021) (it is "axiomatic" that standing for injunctive relief requires a threat of future injury that is actual and imminent and redressable by a favorable decision); *McGee v. Solicitor Gen. of Richmond Cty., Ga.*, 727 F.3d 1322, 1325 (11th Cir. 2013) (declaratory relief, like injunctive relief, is "by its nature prospective," and "[f]or a plaintiff seeking prospective relief to have standing, he must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future"). This case is moot.

It is moot, moreover, regardless of whether Martin continues to dispute the constitutionality of § 50-5-85 as it applies to others. Because the statute no longer applies to her, any dispute the parties may have over its

constitutionality "is no longer embedded in any actual controversy about *the plaintiffs'* particular legal rights." *Alvarez*, 558 U.S. at 93 (emphasis added) (finding moot a challenge to state forfeiture procedures that no longer applied to the plaintiff even though "[t]he parties … continue[d] to dispute the lawfulness of the State's hearing procedures"). It is, at most, an "abstract dispute about the law, unlikely to affect th[is] plaintiff[]…." *Id.* And, as discussed, "'the Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*.'" *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771-72 (2000) (emphasis in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

It is true that an exception to the mootness doctrine exists in some cases of "voluntary cessation" of the challenged conduct by a defendant. *See, e.g., Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020). "The basis for the voluntary-cessation exception is the commonsense concern that a defendant might willingly change its behavior in the hope of avoiding a lawsuit but then, having done so, 'return to [its] old ways.'" *Id.* (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). But governmental entities and officials are given "considerably more leeway than private parties" in the presumption that they will not do so. *Id. See also Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013) (noting that "voluntary cessation by a government actor gives rise to a

rebuttable presumption that the objectionable behavior will not recur"). And where, as here, a statutory amendment discontinues a challenged practice, the change is sufficient to render the case moot unless "a court is presented with evidence of a 'substantial likelihood' that the challenged statute will be reenacted" in its prior form. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333-34 (11th Cir. 2005) (quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1329 (11th Cir. 2004)). *See also Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020) ("'The key inquiry' is whether the plaintiff has shown a 'reasonable expectation'—or, as we phrased it elsewhere, a 'substantial likelihood'—that the government defendant will reverse course and reenact" the allegedly offensive portion of its rule or statute).

Here, there is no basis to think that the General Assembly is substantially likely to again amend § 50-5-85 and return it to its prior form if this case is dismissed as moot. On the contrary, "it is remote, and indeed unrealistically speculative, that these defendants will ever again expose the plaintiff[] to the claimed injury that prompted this lawsuit." *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (addressing a claim of mootness following similar amendments to an anti-boycott statute and finding that "[t]he very process of the enactment of [the amendments] by the state

legislature and governor, combined with the presumption of good faith … afford[ed] government actors, overcomes concerns of voluntary cessation").

In fact, both the Fifth and Ninth Circuits have dismissed as moot constitutional challenges to similar anti-boycott statutes in largely the same circumstances presented here. *Amawi v. Paxton* involved a challenge by several plaintiffs to a Texas law which, like O.C.G.A. § 50-5-85, requires state contracts to include a "no boycott of Israel" clause. 956 F.3d at 819-820. The district court entered an order preliminarily enjoining enforcement of the statute, and the defendants appealed. *Id*. While the appeal was pending, Texas enacted legislation that limited application of the statute to companies with 10 or more full-time employees and to contracts that with a value of $100,000 or more. *Id*. at 820. Observing that the plaintiffs, all sole proprietors, were "no longer affected" by the statute, the Fifth Circuit found that they "lack[ed] a personal stake in the outcome of th[e] litigation." *Id*. at 819. The court thus declined to address the propriety of the district court injunction, explaining that, in light of the statutory amendments, the parties had "no case or controversy before the court" and the case was moot.[3] *Id*. at 819, 822.

---

[3] The Fifth Circuit found the voluntary cessation exception inapplicable, noting that, in light of the fact that the case involved a legislative enactment and given the presumption of good faith afforded government actors, it was "unrealistically speculative" that the defendants would "again expose the plaintiffs to the claimed injury that prompted the lawsuit." *Id*. at 821.

10

A similar conclusion was reached in *Jordahl v. Brnovich*, 789 F. App'x 589 (9th Cir. 2020). Jordahl, the sole member of a law firm in Arizona which contracted with the state to provide legal services to inmates, challenged an Arizona law that required all public contracts to include a certification from the contractor that it would not engage in a boycott of Israel. *Id.* at 590. The district court preliminarily enjoined the state from enforcing the certification requirement, and the defendants appealed. *Id.* at 591. While the appeal was pending, the state amended the statute to apply only to companies with 10 or more full-time employees and only to contracts valued at $100,000 or more. *Id.* Because the law was no longer applicable to Jordahl and his law firm, the Ninth Circuit found his claims for declaratory and injunctive relief to be moot and remanded the case with instructions to dismiss. *Id.*[4]

Here, too, the challenged statute no longer applies to Martin and, accordingly, her suit no longer presents a case or controversy as required by Article III. The Court lacks of subject matter jurisdiction over the case, and it must be dismissed as moot.

---

[4] Like the Fifth Circuit, the Ninth Circuit found the voluntary cessation exception inapplicable, observing that "legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party" and applying a presumption that the legislature was acting in good faith. *Id.*

## CONCLUSION

For the reasons stated and based on the authorities cited above, the defendants respectfully request that the Court dismiss this action against them in its entirety.

Respectfully submitted,

CHRISTOPHER M. CARR   112505
Attorney General

BETH A. BURTON   027500
Deputy Attorney General

TINA M. PIPER   142469
Senior Assistant Attorney General

/s/*Deborah Nolan Gore*
DEBORAH NOLAN GORE   437340
Assistant Attorney General

PLEASE SERVE:

Deborah Nolan Gore
Assistant Attorney General
40 Capitol Square, S.W
Atlanta, GA  30334-1300
Telephone: (404) 458-3289
dgore@law.ga.gov

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

        */s/ Deborah Nolan Gore*
        DEBORAH NOLAN GORE
        Georgia Bar No. 437340

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record in this case.

This 1st day of July, 2022.

*/s/ Deborah Nolan Gore*
DEBORAH NOLAN GORE

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-6920
dgore@law.ga.gov